HOLLENBERG MUSIC CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14546.   Promulgated March 9, 1927.

Where the evidence fails to show that the disposition of an interest in real estate by a corporation to its stockholders constituted a sale, as distinguished from a distribution in kind, a loss alleged to result from the so-called sale is not established.

*M. A. Matlock, Esq.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the respondent.

This proceeding results from the determination by the Commissioner of a deficiency in income tax for the year 1920, in the amount of $771.69. The petitioner contests that part of the deficiency due to the Commissioner's disallowance of a deduction of $5,000, representing a loss alleged to have been sustained on the sale of real estate, and a deduction of a $1,500 rental payment alleged to have been made by the petitioner.

#### FINDINGS OF FACT.

The petitioner is an Arkansas corporation, engaged in the business of selling musical instruments, with its principal place of business at Little Rock. Its principal stockholders are F. B. T. Hollenberg, who has been president of the corporation since 1891

and who held more than 80 per cent of its stock during 1920, and W. B. Parsons, who was treasurer during 1920 and owned 10 per cent of its stock. Hollenberg also dealt largely in real estate in Little Rock.

In January of 1911, the lease on the property housing petitioner's business being about to expire, the petitioner passed a resolution authorizing Hollenberg to negotiate for more suitable quarters, either by lease or purchase or by a 99-year leasehold on property on which petitioner might erect its own building. Hollenberg found that certain property then occupied by the First Presbyterian Church of Little Rock could be purchased for $40,000. The officers of the petitioner concluded that it would be unwise for the petitioner at that time to purchase property representing so large an investment, as the petitioner would not need it for several years. Hollenberg purchased the property as an individual, with an oral understanding that the petitioner could and would buy it from him later by paying him the amount which it had cost him, plus interest, taxes, etc., at the time the corporation took over the property.

The First Presbyterian Church transferred the property to F. B. T. Hollenberg by deed dated August 5, 1912, which recited the consideration to be as follows:

For and in consideration of the sum of forty-thousand dollars ($40,000.00) paid and to be paid by F. B. T. Hollenberg, as follows: to-wit:

$1,000 cash—receipt of which is hereby acknowledged and one note for $4,000.00 due on demand, after thirty days notice, and without interest, and his six promissory notes for the sum of $5,000.00 each, payable on or before one, two, three, four, five and six years, respectively, with interest thereon at the rate of 6% per annum, interest to be paid semi-annually, but no interest to be paid except after twelve months from this date, and one pipe organ valued at $5,000.00, to be delivered within twelve months from the date of said deed, according to the specifications agreed upon.

The deed purports to convey the property to F. B. T. Hollenberg absolutely and makes no mention of the petitioner as being concerned in the transfer. Hollenberg, as an individual, made the down payment and executed the notes evidencing the balance of the purchase price.

As the notes became due they were paid in part by petitioner and in part by Hollenberg as an individual. An excerpt from the minutes of a corporate meeting held January 11, 1916, is as follows:

Whereas, F. B. T. Hollenberg purchased 50 feet and 10 feet easement on East Fifth Street, to be utilized by the Hollenberg Music Co. and the Company has paid approximately $10,000.00 and F. B. T. Hollenberg has paid balance, with exception of $10,000.00 which is due in May, 1916, and the delivery of a $5,000.00 Pipe Organ, which delivery was assumed by the Hollenberg Music Company, making about $15,000.00 paid by Hollenberg Music Company and as the purchase price was $40,000.00, in order to take over the property the company would have to pay F. B. T. Hollenberg $15,000.00 and assume the

mortgage of $10,000.00. But not desiring to do so at this time, the treasurer, W. B. Parsons, is directed to pay F. B. T. Hollenberg interest upon the $15,000.00 or any other sums advanced by him upon this property for purchase price, taxes, insurance, improvement taxes, or otherwise, to the effect that a full and complete adjustment and settlement will be had with F. B. T. Hollenberg up to January 1, 1916, upon that date, leaving unsettled only the amount $15,000.00, due F. B. T. Hollenberg, balance of purchase price, and interest at 6 per cent from January 1, 1916, payable semi-annually until such time as the company may elect to pay the $15,000.00 to him and actually take over the property. And the company is to assume the mortgage of $10,000.00 against said property.

Subsequent to the date of this resolution, the petitioner paid additional sums, the total payments made by it on the balance due on the property amounting to $18,828.71. This amount was carried on the petitioner's books in a real estate account. Thereafter, the petitioner decided not to take over the property but to dispose of its interest therein as represented in the $18,828.71 real estate account. To accomplish a satisfactory disposition of its interest in the property and eliminate the real estate account from its books, the petitioner declared a dividend of $24,000, as is shown by the following resolution dated February 6, 1917:

Upon motion of F. B. T. Hollenberg, and seconded by W. B. Parsons, a dividend of 24% is hereby declared. This dividend of 24% to be paid to the stockholders out of the surplus and undivided profits in its real estate on East Fifth Street, (being fifty feet off of the West ends of Lots, 7–8–9, Block 5, Little Rock), amounting to $18,828.71, and the sum of $5,171.29 cash. It being understood and agreed by all of the stockholders, however, that this $5,171.29 is to be paid into the new corporation, owning Fifth Street property, and the stockholders receiving this dividend of $5,171.29 are to take stock in the Company in lieu of cash. Carried.

These resolutions having been adopted unanimously, the action of the Board at meeting of the Directors on January 11th, 1916, pertaining to resolution then duly adopted and recorded on page 71, (this minute book) to settle with F. B. T. Hollenberg for his interest in East Fifth Street property and the Company to take over the entire property, is now therefore hereby cancelled and annulled, as above resolution duly carried is in lieu thereof, and this Company has no interest in said property by reason of the resolution above adopted, and it is so ordered by vote of the Directors present and acceptance of same by F. B. T. Hollenberg.

Upon authority of this resolution, and to carry it into effect, three entries were made in the petitioner's books early in 1917, after 1916 audit had been completed. The first entry charged surplus with $24,000 and credited dividend account, the next charged dividend account with $18,828.71 and credited real estate account, the remaining entry charged the dividend account with $5,171.29 and credited the German National Bank with having drawn a draft of $5,171.29. The two items charged to dividend balanced the credits thereto of a like amount.

Upon the advice of a revenue agent, the new corporation (presumably to be organized by the petitioner) contemplated by the resolution was not created. Instead the interest in the property was placed in a trust in which the stockholders held a pro rata beneficial interest. The other stockholders deeded their interest in the property to Hollenberg and he gave them back a declaration of trust. Some time during 1916 or 1917, Hollenberg let a contract for the erection of a building, which now stands on the property. The petitioner corporation, having disposed of its interest in the property, had nothing to do with this building.

At the time the corporation decided to dispose of its interest in the church property, the pipe organ, which formed a part of the consideration to be paid the church, had not been delivered. Under the agreement by which petitioner disposed of the property to its stockholders or to Hollenberg, as heretofore set forth, the petitioner agreed to retain the liability for delivery of the organ whenever the church demanded it. In 1920 the church demanded the organ, and the settlement made by the petitioner is disclosed by the following resolution dated October 11, 1920:

The Treasurer reported his settlement with the Presbyterian Church whereby he paid Five Thousand ($5,000.00) Dollars in full settlement of the obligation of the Hollenberg Music Company to deliver to said church a certain pipe organ when called upon by the Trustees of the church to make such delivery.

He informed the Directors that when the property on Fifth Street was purchased, the Hollenberg Music Company assumed an obligation to deliver said organ, which was described in the agreement as being one similar to the organ previously sold and delivered to the Second Baptist Church.

The trustees of the Presbyterian Church had requested delivery of said organ and in taking the matter up with W. W. Kimball Company, they advised that this organ had been discontinued and it would be impracticable to reproduce it. This having been reported to Mr. Gray, representing the Board of Trustees, thereupon an agreement was entered into by the Trustees and the Treasurer, whereby the Company was to pay the Trustees the sum of Five Thousand ($5,000.00) dollars in lieu of the delivery of the aforesaid organ, which was accepted, and the Five Thousand ($5,000.00) Dollars paid July 1, 1920. By resolution unanimously adopted, the action of the Treasurer was ratified and affirmed. And, whereas, the Company has previously realized profit of One Thousand Two Hundred and Fifty ($1,250.00) Dollars from the sale of an old organ (which was sold to the Bethel A. M. E. Church of this city) taken out of the church and which was part of the contract, the aforesaid sum of Five Thousand ($5,000.00) Dollars paid as full quittance for the delivery of said organ to the church is hereby directed to be charged to profit and loss account and the transaction closed. Carried by unanimous vote.

The petitioner claimed the $5,000 paid to the church in 1920 as a deductible loss for 1920. The Commissioner disallowed the loss, which disallowance, together with the disallowance of the rent deduction, forms the basis for this appeal.

## OPINION.

MILLIKEN: In the absence of any evidence respecting the disallowance of the rent deduction, we need only consider the propriety of the disallowance of the deduction of $5,000 alleged to have been sustained as a loss in 1920 on the sale of real estate. The petitioner's contention is that it purchased the church property in question from F. B. T. Hollenberg, in 1916, and thereafter sold it back to the stockholders during 1916 or 1917, retaining the liability to deliver the pipe organ, which liability resulted in a loss in the year 1920, when the settlement was made therefor with the First Presbyterian Church. The resolution of January 11, 1916, together with the resolution of February 6, 1917, and the oral testimony, tended to show that the petitioner did purchase the property from Hollenberg pursuant to the oral agreement existing between them. However, it is not clear that the later disposition of petitioner's interest constituted a sale. The petitioner apparently considers the 24 per cent dividend declared by the resolution of February 6, 1917, to be a cash dividend and that the stockholders took the real estate in lieu of the cash due them thereunder. However, the resolution, as interpreted by the parties, authorizes the distribution of its interest in real estate and of certain stock (whether in the petitioner corporation or the proposed new corporation, is uncertain).

The oral testimony indicates that the parties involved considered the steps taken to dispose of the property interest to be a sale, but the record does not disclose just what took place. It is evident that no clear distinction was made between the petitioner corporation and the individuals who were its stockholders. This confusion of interests is reflected in the testimony, making it impossible to draw therefrom a comprehensive understanding of the plan worked out by petitioner. If, as the resolution of February 6, 1917, indicates, the petitioner merely distributed the property interest along with other dividends, we are unable to see that loss, contingent or otherwise, resulted from the distribution. Since we are unable to find as a fact that a sale was made, we need not further consider the petitioner's contention that it sustained a $5,000 loss in 1920.

*Judgment will be entered for the respondent.*